[Crim. No. 779.   In Bank.— September 6, 1901.]

Ex parte WILLIAM McCLAIN, on Habeas Corpus.

MUNICIPAL CORPORATIONS — POSSESSION OF LOTTERY TICKETS — CONSTI-
TUTIONAL LAW. — Under section 11 of article XI of the state consti-
tution, a municipal corporation, in the exercise of its police powers,
has authority, by ordinance, to make it unlawful for any person to
have in his possession a lottery ticket, and to punish its violation.
Such an ordinance is neither unreasonable nor oppressive.

HABEAS CORPUS from the Supreme Court to the Sheriff
of the City and County of San Francisco to test the validity of
a municipal ordinance under which petitioner was convicted
in the Police Court.   Charles T. Conlan, Judge.

The facts are stated in the opinion of the court.

N. S. Wirt, for Petitioner.

A. S. Newburgh, *amicus curiæ*, also for Petitioner.

Charles L. Weller, Assistant District Attorney, for Respond-
ent.

HENSHAW, J. — By ordinance No. 68 of the city and county
of San Francisco it is made "unlawful for any person to have in
his possession any lottery ticket," etc., and upon conviction of
a violation of the terms of the ordinance the defendant may be
punished by fine or imprisonment, or both.   The petitioner here
was convicted of a violation of this ordinance, and seeks his
release under this writ, upon the asserted ground that the ordi-
nance in question is unreasonable and void.

The United States government refuses the use of its mails to
advertising lotteries, transmission of lottery tickets, the an-
nouncement of the winning numbers in lotteries,— in short, to
the sending of any literature in aid of such gambling schemes,
— and it makes penal the violation of its laws in any of these
respects.   The state of California, by its penal laws, prohibits
the setting up of a lottery, and declares it to be a misdemeanor
for any person to sell a lottery ticket.   There are, then, against
all gambling devices of this kind, not only the public policy of
the general government and of this state, but also the express
mandate of their criminal laws, so that the avowed policy and

the expressed intent is to stamp out, by penal legislation, the
traffic in lottery tickets. It is true that the state, while de-
claring it to be a penal offense to sell a lottery ticket, has not
made the purchaser equally culpable. But no one will ques-
tion the right of the state to declare, if it see fit so to do, that
the purchaser of a lottery ticket, equally with the seller, is
guilty of a misdemeanor. It may be concluded, therefore,
that in a reasonable exercise of its police powers a municipality
may pass any ordinance in furtherance of the avowed general
policy of the national and state government. In this regard
our cities and counties draw their power, not from legislative
permission, but from the direct grant of the constitution itself,
which, by section 11 of article XI, empowers them to make and
enforce within their limits all such local, police, sanitary, and
other regulations as are not in conflict with general laws.

The matter of this ordinance being, then, clearly one of
police regulation, and the power to pass such ordinances being
expressly conferred upon a municipality, there is left for con-
sideration the question whether the exercise of that power in
this instance be unreasonable or oppressive for the accomplish-
ment of the end in view.

Against its validity it is urged that it is unreasonable, in
making the mere possession, without reference to any ultimate
intent of the possessor, an offense, and, as is usual when a law is
attacked upon this ground, harrowing instances are cited,—as
of a blind man to whom might be given a lottery ticket, he not
knowing it to be such, or of another into whose pocket might
be thrust the damnatory paper without knowledge upon his
part that it was in his possession, and even — so run the argu-
ment and citations—the peace-officer who arrests a violator
of the law, and takes into his own custody the criminatory
evidence, is, under the terms of this ordinance, equally guilty.
But the answer to all this is the answer that has been made
by every court as often as the argument has been pressed to
consideration. The matter is discussed in *Ex parte Lorenzen*,
128 Cal. 431,[1] wherein is quoted the language of Mr. Justice
Field in *United States* v. *Kirby*, 7 Wall. 482, which may well
be repeated here: " General terms should be so limited in their
application as not to lead to injustice or oppression, or an ab-
surd consequence. It will always be presumed that the legis-

---

[1] 79 Am. St. Rep. 47.

lature intended exceptions to its language which would avoid results of this character. The reason of the law in such cases should prevail over its letter." This kind of legislation is not new to jurisprudence, nor novel upon the statute-books of this state; yet it has never been found necessary to overthrow a law, otherwise valid, because in some supposititious case a person might be charged with its violation, who came within the letter, yet not within the spirit, of the enactment. An ordinance of this city and county, for example, prohibits the carrying of a concealed weapon. It is the mere carrying, under the letter of the law, which constitutes the offense, not a carrying with intent to commit some act of violence. Yet this court has found no difficulty in upholding the law. (*Ex parte Cheney*, 90 Cal. 617.) The citizen who bought a pistol or knife at a gun-store, caused it to be wrapped in a parcel, and proceeded to carry it to his home, might be said, under the letter of the law, to have committed a violation of it. Yet he has not violated the spirit of the law, and the law would hold him guiltless. The statute-books of this and other states abound in provisions for the protection of fish and game, and amongst them is commonly found a law making it penal for one, within certain designated months, " to have in his possession " fish or game of prescribed kinds. In such laws it is not the *purpose* of the possession, but the *fact* of possession, which *prima facie* establishes the offense. And so, while, in their construction of the game laws, courts have differed as to their scope, — some holding that the defendant was exculpated if he showed that the game in his possession was killed without the boundaries of the state, others holding that it applied equally to game so destroyed, — in all cases there has been an agreement by the courts that the fact of possession *prima facie* evidenced a violation of the act. (*Phelps* v. *Racey*, 60 N. Y. 10; [1] *State* v. *McGuire*, 24 Or. 370; *Commonwealth* v. *Wilkinson*, 138 Pa. St. 304; *Ex parte Maier*, 103 Cal. 476; [2] *State* v. *Judy*, 7 Mo. App. 524; *Bellows* v. *Elmendorf*, 7 Lans. 462; *People* v. *Fishbough*, 134 N. Y. 393.)

The design of the ordinance is to stamp out lotteries and the traffic in lottery tickets. For if there were no buyers of lottery tickets, there would be no sellers of them, and while, as has been said above, by the state law only the seller is made

[1] 19 Am. Rep. 140.                    [2] 42 Am. St. Rep. 129, and note.

culpable, it is clearly within the power and province of the municipality, in its endeavor to eradicate the evil, to hold the purchaser or possessor also culpable.

In the case of *People* v. *Wong Hane*, 108 Cal. 680, the attention of the court was directed more particularly to the requirements of the ordinance which seemed to exact from the defendant proof of his innocence. If a variance shall be thought to exist between the views there expressed and those here announced, it need but be said that we are satisfied that the foregoing enunciates a sound principle of statutory construction.

For the reasons above given the writ is discharged and the prisoner remanded.

McFarland, J., and Beatty, C. J., concurred.

GAROUTTE, J., concurring. — I concur in the judgment, but deem the language of Justice Field, cited in the main opinion, entirely too general to serve as authority in support of the conclusion here declared. Neither am I at all disposed to agree to the reasoning contained in the opinion of the court promulgated in *Ex parte Lorenzen*, 128 Cal. 431.[1] At the same time, I see no reason why the law-making power may not declare that the possession of a lottery ticket by a person shall constitute a misdemeanor. The statute clearly means a possession *knowingly*, and so construed, there is no legal objection to its validity. (*Ford* v. *State*, 85 Md. 465;[2] *Ex parte Mon Luck*, 29 Or. 221.)

---

[1] 79 Am. St. Rep. 47.          [2] 60 Am. St. Rep. 337.
CXXXIV. Cal.—8