[No. G001738. Fourth Dist., Div. Three. Sept. 24, 1985.]

In re SHARON ELIZABETH BENSON on Habeas Corpus.

**COUNSEL**

R. K. Fox, City Attorney, Rutan & Tucker, Leonard A. Hampel and Heather A. Mahood for Appellant.

Thomas E. Beck for Respondent.

## Opinion

**SONENSHINE, J.**—The City of Fullerton challenges a judgment of the superior court granting a writ of habeas corpus declaring two municipal antigaming ordinances unconstitutional and enjoining further prosecutions under the ordinances.[1] Neither ordinance is constitutionally infirm and we reverse the judgment finding them void.

A complaint was filed in the municipal court charging Sharon Elizabeth Benson with violating sections 7.130.010 (gambling for commercial purposes) and 7.125.010 (playing the game of panguingue for money) of the Fullerton Municipal Code.

Benson demurred to the complaint on the grounds the code sections were unconstitutional. The municipal court overruled her demurrer and she sought relief by petitioning for writ of habeas corpus in the superior court. After briefing and argument, the superior court agreed the two ordinances were unconstitutional, issued its writ of habeas corpus and enjoined the city from prosecuting others under the same code sections.

In its order granting the petition for writ of habeas corpus, the superior court concluded each section was "unconstitutionally vague and uncertain in that while the apparent legislative intent is to regulate gambling activities, there is no provision defining a game of chance and no provision requiring as an element of the offense that the prohibited game be one whose outcome is determined by chance. As drafted (and excluding the title), this [*sic*] ordinance would prohibit any and all sports activities where the players receive monetary rewards based on performance and the promoters make a profit. Such is clearly not the intent of the City Council."

I

■ Our analysis of each ordinance is founded on a basic principle of statutory construction: We are required to presume the constitutionality of the ordinances. " 'All presumptions and intendments favor the validity of a statute and mere doubt does not afford sufficient reason for a judicial declaration of invalidity. Statutes must be upheld unless their unconstitutionality clearly, positively and unmistakably appears. [Citations.]' " (*In re Dennis M.* (1969) 70 Cal.2d 444, 453 [75 Cal.Rptr. 1, 450 P.2d 296]; *Lockheed Aircraft Corp.* v. *Superior Court* (1946) 28 Cal.2d 481, 484 [171 P.2d 21].)

---

[1]Appellant does not challenge the procedural propriety of enjoining further prosecutions via writ of habeas corpus. In any event, our decision renders that question moot.

█ We recognize due process requires criminal statutes give "fair notice" of what conduct is prohibited. (*Burg* v. *Municipal Court* (1983) 35 Cal.3d 257, 270-271 [198 Cal.Rptr. 145, 673 P.2d 732].) "However, sufficient warning is all that is constitutionally required; and sufficient warning is present if the statutory language makes it reasonably certain as to what is prohibited. [Citation.]" (*People* v. *Demery* (1980) 104 Cal.App.3d 548, 556 [163 Cal.Rptr. 814].)

█ In interpreting the meaning of the ordinances in question, we are also guided by the principle that an apparent ambiguity can be resolved by resorting to " 'any demonstrably established technical or common law meaning of the language in question.' " (Italics omitted, *ibid.*, quoting from *People* v. *Belous* (1969) 71 Cal.2d 954, 960 [80 Cal.Rptr. 354, 458 P.2d 194].)

## II

Fullerton Municipal Code section 7.130.010 provides: "Every person, firm, corporation or association who, for profit, or for anything of value or for commercial purpose of any nature, keeps, operates, conducts or maintains, either directly or indirectly, within the city any house, room, apartment, dwelling place, building, premises or other place where any game, gambling or gaming not mentioned or included in Section 330 or 330a of the Penal Code of the State of California is played, conducted, dealt or carried on whether with cards, dice, or any other device of whatsoever nature, for money, checks, credit, merchandise or other representative of value shall be guilty of a misdemeanor.

"Every person, firm, corporation or association, either as owner, lessor, lessee, principal, agent, employee or participant or otherwise, who maintains or keeps or operates or conducts directly or indirectly in whole or in part or who directly or indirectly is in possession in whole or in part of any house, room, apartment, dwelling place, building, premises, or other place upon or in which any gambling, games or gaming prohibited in this section are played, conducted, dealt or carried on, and who imposes or collects a fee or anything of value for the privilege of participating in any way whatsoever in any such games, gambling or gaming, or who directly or indirectly gains or receives anything of value or any financial profit from playing, conducting or dealing any such games, gambling or gaming shall, for the purposes of this article, be deemed to be keeping, conducting, operating and maintaining the same for profit or commercial purposes."

█ The municipality's police power includes the right to regulate gambling, unless preempted by state law. (*In re Hubbard* (1964) 62 Cal.2d 119,

124 [41 Cal.Rptr. 393, 396 P.2d 809], overruled on other grounds in *Bishop v. City of San Jose* (1969) 1 Cal.3d 56, 63, fn. 6 [81 Cal.Rptr. 465, 460 P.2d 137]; *Ex parte McClain* (1901) 134 Cal. 110, 111 [66 P. 69].) Fullerton Municipal Code section 7.130.010 specifically excludes those games governed by the state legislation and therefore is a legitimate exercise of local police power not preempted by state law. (See *In re Murphy* (1900) 128 Cal. 29 [60 P. 465]; *In re Farrant* (1960) 181 Cal.App.2d 231 [5 Cal.Rptr. 171].)

■ Benson does not attack either ordinance on preemption grounds. Rather, she argues the city may not create new gambling offenses which are not recognized by the general body of state law; specifically, games which are skill-determinative rather than chance-determinative. She argues the local police power to regulate gambling is limited to the regulation of chance-determinative games.

We find no authority to support this argument. Each of the cases cited by Benson interprets ordinances which, on their face, expressly regulate games of chance. But that phraseology is not grounded in the law. The local police power extends to regulating any gambling—monetary wagers—on any game, regardless of the game's result being dependent on chance or skill.

Nevertheless, the superior court found Fullerton Municipal Code section 7.130.010 to be broader than the city's police power, interpreting it to include more than illegal gambling. The court found the ordinance prohibited playing *any* game for money. It stated, as an example, the ordinance would prohibit professional athletes from playing their sport in Fullerton. We disagree and refuse to ignore the obvious intent of the city council. We find the ordinance appropriately prohibits only *gambling* games. The reference to "game" in Fullerton Municipal Code section 7.130.010, in the context of the rest of the sentence, "played, . . . for money," has a common law meaning: gambling. The phraseology is clearly understood from the ordinance and gives fair notice to all persons of what conduct is prohibited. (See *People v. Nunn* (1956) 46 Cal.2d 460, 467 [296 P.2d 813].)

Moreover, limiting the ordinance to gambling is a reasonable interpretation which is consistent with the Constitution. (See *Welton v. City of Los Angeles* (1976) 18 Cal.3d 497, 505 [134 Cal.Rptr. 668, 556 P.2d 1119].) The regulation of gambling is an appropriate exercise of local police power when not preempted by state law. (*In re Hubbard, supra,* 62 Cal.2d at p. 124.) This particular ordinance expressly excludes the statewide legislation to avoid preemption problems. By so doing, the ordinance also evidences its intended meaning to regulate all other gaming within the local

police power. We conclude Fullerton Municipal Code section 7.130.010 has a plain meaning which withstands constitutional scrutiny.

## III

█ Fullerton Municipal Code section 7.125.010 provides: "Every person who deals, plays, or carries on, opens, or causes to be opened, or who conducts, either as owner or employee, whether for hire or not, any game of panguingue, commonly known as 'pan,' for money, checks, credit, or other representative of value, and every person who plays or bets at or against any of the said prohibited games, is guilty of a misdemeanor, and shall be punished by a fine of not less than One Hundred Dollars ($100.00) nor more than Five Hundred Dollars ($500.00), or by imprisonment in the county jail not exceeding six months, or by both such fine and imprisonment."

This ordinance is more precise; it prohibits playing panguingue for money. At first glance, the absence of language defining panguingue leaves one wondering whether the ordinance provides adequate notice of illegal conduct. (See *Connally* v. *General Construction Co.* (1926) 269 U.S. 385, 391 [70 L.Ed. 322, 328, 46 S.Ct. 126].) Penal Code section 330 prohibits playing a variety of specific games for money. It generally prohibits the playing of any "banking or percentage" game for money, but fails to define any of the specific games. Nevertheless, Penal Code section 330 is constitutional. The question of defining the prohibited games is one of fact, an issue for the jury. (See *People* v. *Sam Lung* (1886) 70 Cal. 515 [11 P. 673].)

More importantly, panguingue has been expressly found to be excluded from Penal Code section 330 because it is not a "banking or percentage" game. (*In re Hubbard, supra,* 62 Cal.2d 119; *People* v. *Ambrose* (1953) 122 Cal.App.2d Supp. 966 [265 P.2d 191].) A local government may, however, prohibit gambling on panguingue because the state has not preempted the entire field of gambling. (*In re Hubbard, supra,* 62 Cal.2d at p. 126.) By enacting section 7.125.010, Fullerton has successfully expanded statewide prohibitions against gambling and outlawed the playing of panguingue for money. (See *Ex parte McClain, supra,* 134 Cal. 110; *In re Murphy, supra,* 128 Cal. 29; *People* v. *Mason* (1968) 261 Cal.App.2d 348 [68 Cal.Rptr. 17]; *In re Farrant, supra,* 181 Cal.App.2d 231; *Remmer* v. *Municipal Court* (1949) 90 Cal.App.2d 854 [204 P.2d 92]; *Monterey Club* v. *Superior Court* (1941) 48 Cal.App.2d 131 [119 P.2d 349].)

Curiously, the complaint in this case adds the phraseology, not included in the ordinance, that panguingue is a game of chance. That language is superfluous to the violation charged. However, the effect of its inclusion in

the complaint is not an issue here. Similarly, we are not asked whether the facts alleged would constitute a violation of the ordinances charged. Our review is limited to the constitutionality of the ordinances on their face, not as they might be applied. (See *Aaron* v. *Municipal Court* (1977) 73 Cal.App.3d 596, 599 [140 Cal.Rptr. 849].)

The order issuing the writ of habeas corpus and declaring Fullerton Municipal Code sections 7.130.010 and 7.125.010 unconstitutional is reversed.

Trotter, P. J., and Crosby, J., concurred.