[No. B019388. Second Dist., Div. Seven. Dec. 31, 1986.]

WILLIAM LOSKA, Petitioner, v.
THE SUPERIOR COURT OF LOS ANGELES COUNTY, Respondent;
THE PEOPLE, Real Party in Interest.

**COUNSEL**

William Loska, in pro. per., for Petitioner.

No appearance for Respondent.

James K. Hahn, City Attorney, and Greg Wolff, Deputy City Attorney, for Real Party in Interest.

OPINION

THOMPSON, J.—The issue before us is the constitutionality of Los Angeles Municipal Code[1] section 42.03, subdivision (a), prohibiting the sale of, or offer to sell, tickets of admission to a public assemblage in any public place.[2]

Petitioner William Loska was charged with violating the ordinance in that he "did willfully and unlawfully upon a public street, sidewalk, park and other public place, sell and resell and offer to sell and resell a ticket of admission to a place of public assemblage." Petitioner was on Stadium Way in Elysian Park Drive, approximately one-quarter mile north of Dodger Stadium, when he was arrested. Petitioner, who was proceeding in pro. per., challenged the constitutionality of the law in a motion to suppress. The municipal court held that the ordinance was unconstitutional, granted the motion to suppress and dismissed the case. The People appealed. ██ ██ The appellate department of the superior court reversed on procedural grounds[3] and also held the ordinance was valid. Petitioner sought a writ of habeas corpus in this court. ██ ██ ██ We exercised our discretion to grant a writ of review.[4]

DISCUSSION

I

*Police Power*

Under the police power granted by the California Constitution, cities have plenary authority to govern, subject only to the limitation they exercise

---

[1]Unless otherwise stated all statutory references are to the Los Angeles Municipal Code.

[2]Section 42.03, subdivision (d)(1), defines a " 'Place of Public Assemblage' " as "every place of public amusement or entertainment, stadium, auditorium, theatre, athletic field, concert hall or arena which is open to the public upon compliance with requirements for admission thereto."

[3]The appellate department of the superior court correctly pointed out the trial court erred in dismissing the case pursuant to Penal Code section 1538.5. A section 1538.5 motion to suppress is limited to search and seizure issues (*People* v. *Campa* (1984) 36 Cal.3d 870, 885 [206 Cal.Rptr. 114, 686 P.2d 634]) and may not rest upon other constitutional violations (*People* v. *Superior Court (Scott)* (1980) 112 Cal.App.3d 602, 605 [169 Cal. Rptr. 412]). Although the pro. per. petitioner cited the wrong section and should have properly raised the issue as a demurrer (see Pen. Code, § 1004), the court and the People were clearly notified that he was challenging the constitutionality of the law under which he was arrested.

[4]The People argue that a writ of review does not lie because the appellate department did not act in excess of its jurisdiction. We do, however, have the power and choose to exercise it to reach the merits of this question of the constitutionality of the ordinance. (See, e.g., *Randone* v. *Appellate Department* (1971) 5 Cal.3d 536, 543 [96 Cal.Rptr. 709, 488 P.2d 13]; *Dvorin* v. *Appellate Department* (1975) 15 Cal.3d 648, 650 [125 Cal.Rptr. 771, 542 P.2d 1363].)

this power within their territorial limits and subordinate to state law. (Cal. Const., art. XI, § 7.) ▇ Apart from this limitation, the police power of a city is as broad as the police power exercised by the Legislature itself. (*Candid Enterprises, Inc.* v. *Grossmont Union High School Dist.* (1985) 39 Cal.3d 878, 885 [218 Cal.Rptr. 303, 705 P.2d 876].) Municipal police power extends to objectives in furtherance of the public peace, safety, morals, health and welfare. It is not a circumscribed prerogative but rather is elastic. (*Fisher* v. *City of Berkeley* (1984) 37 Cal.3d 644, 676 [209 Cal.Rptr. 682, 693 P.2d 261].) In exercising its police power, a city has broad discretion to determine what is reasonable in endeavoring to protect public safety, health, morals, and general welfare. (*Carlin* v. *City of Palm Springs* (1971) 14 Cal.App.3d 706, 711 [92 Cal.Rptr. 535].) So long as a city ordinance is within the power of the city council to enact, and *so long as the ordinance does not offend constitutional rights,* the ordinance is valid. (*Park & Shop Markets, Inc.* v. *City of Berkeley* (1981) 116 Cal.App.3d 78, 93 [172 Cal.Rptr. 515].)

It is not the function of the appellate court nor within that court's province to sit as a super-Legislature, passing on the wisdom or lack thereof of legislative enactments. (*Ibid.*) ▇ Thus, the court is not concerned with the wisdom or policy of the law; it cannot substitute its judgment for that of the legislative body if there is reasonable justification for the latter's action. (*Amezcua* v. *City of Pomona* (1985) 170 Cal.App.3d 305, 310 [216 Cal.Rptr. 37].)

Section 42.03 provides in pertinent part: "(a) Except as otherwise provided in this section, no person in or upon any public street, sidewalk, park or other public place shall sell or resell or offer to sell or resell any ticket of admission to a place of public assemblage. . . . (c) The provisions. . . of this section shall not include or apply to the sale of such tickets at or from any ticket office, booth or other similar place regularly and permanently established and maintained therefor with the express permission and authorization of the person or governmental agency in charge, care or control of the property in which such office, booth or place is located."

The section was amended to its current form in 1961 by ordinance No. 120,444. The preamble set forth the following explanation of the problems justifying the passage of the ordinance:[5] "WHEREAS, the practice of selling and attempting to sell tickets of admission to places of public assemblage other than from regularly established ticket offices in public places and places open to the public continues with increasing frequency throughout the City, and [¶] WHEREAS, such practice has resulted and continues to

---

[5]Pursuant to Evidence Code section 452, we have taken judicial notice of the ordinance.

result in the sale of counterfeit tickets thereby defrauding the public, and [¶] WHEREAS, such practice has resulted and continues to result in assault upon and injury to members of the public in such places, and [¶] WHEREAS, such practice has resulted and continues to result in purse snatching and other assorted robberies, and [¶] WHEREAS, such practice has resulted and continues to result in the interference with the normal and lawful flow of vehicular and pedestrian traffic in and around such places, and [¶] WHEREAS, such practice has resulted and continues to result in the harassment and annoyance of the public in its lawful and regular use of such places, and [¶] WHEREAS, the continuance of such practice is contrary to and adversely affects the peace, safety and welfare of the citizens of this community and the lawful conduct and operation of places of public assemblage[.]"

The People contend that the ordinance is a valid exercise of police power "to limit the use of public streets and sidewalks for commercial purposes."[6] The People argue it properly regulates the location of any ticket sale by preventing the use of public property for such private commercial purposes.

"A business may be inherently lawful and still subject to police regulation, but when such lawful business is regulated, it is a judicial question whether the law or ordinance is a lawful exercise of the police power. [Citations.] If, in the opinion of the court, a statute or ordinance purporting to be enacted to protect the public health, safety, morals, comfort, convenience or general welfare has no real or substantial relation to any of those objects, it is the duty of the court to so declare. A legislative body may not, under the guise of the police power, impose restrictions that are unnecessary and unreasonable upon the use of private property or the pursuit of useful

---

[6]Petitioner claims the ordinance herein is an unconstitutional antiscalping ordinance which deprives him of his right to property. Petitioner points to *Ex Parte Quarg* (1906) 149 Cal. 79, 81 [84 P. 766], where the Supreme Court invalidated an antiscalping ordinance as "not a legitimate exercise of police power." The *Quarg* court stated: "The sale of a theatre ticket at an advance upon the original purchase price, or the business of reselling such tickets at a profit, is no more immoral, or injurious to public welfare or convenience, than is the sale of any ordinary article of merchandise at a profit." (*Ibid.*)

But we need not determine whether a municipal antiscalping ordinance would be invalid because it was unconstitutional or preempted by state law. The People in their briefs concede that the city cannot prevent a person from reselling tickets of admission at any price, citing *Ex Parte Quarg, supra,* and *In re Dees* (1920) 50 Cal.App. 11, 13 [194 P. 717]. The People claim this is not an antiticket scalping ordinance. We agree that the ordinance on its face does not prohibit scalping. The ordinance does not attempt to prohibit the sale or resale of tickets per se at any price but merely at certain locations. There is nothing in this ordinance regarding the price of the ticket; the law can be violated regardless of whether the ticket is sold at face value, below face value, or above face value. Moreover, there is no problem of state preemption here. Penal Code section 346 prohibits ticket scalping on the property on which the entertainment event is to be or is being held, without the owner's written permission, and also requires that the ticket must have been originally obtained for the purpose of resale.

activities. [Citations.]" (*McKay Jewelers, Inc.* v. *Bowron* (1942) 19 Cal.2d 595, 600, 601 [122 Cal.Rptr. 543, 139 A.L.R. 1188].)

 ██ ██ Petitioner in essence contends the ordinance violates his rights to equal protection of the law, due process and "liberty" of speech.[7] The People, however, assert that the previously cited preamble of the ordinance reflects growing problems of counterfeit tickets, assaultive offenses and traffic congestion which justify the decision to prohibit ticket sales on public property.

## II

### *Equal Protection and Due Process*

 We first turn to petitioner's claim of denial of equal protection. Petitioner argues the ordinance invalidly discriminates between ticket vendors and all other vendors and between ambulant ticket vendors and ticket vendors in booths. (See § 42.03, subd. (c).) In order to evaluate this equal protection challenge, we must determine whether petitioner is "similarly situated" to other vendors receiving different treatment. "The first prerequisite to a meritorious claim under the equal protection clause is a showing that the state has adopted a classification that affects two or more *similarly situated* groups in an unequal manner." (*In re Eric J.* (1979) 25 Cal.3d 522, 530 [159 Cal.Rptr. 317, 601 P.2d 549]; italics in original.) The Constitution does not require things which are different in fact or opinion to be treated in law as though they were the same. (*People* v. *Jacobs* (1984) 157 Cal.App.3d 797, 801 [204 Cal.Rptr. 234].)

 Ticket vendors are similarly situated to all other types of ambulatory vendors with respect to the legitimate purposes of the ordinance to alleviate the problems of traffic congestion and assaultive crimes. There is no lesser impact on vehicular or pedestrian traffic throughout the city streets if a vendor is selling or offering to sell oranges, souvenirs or flowers rather than tickets. Nor is there any intrinsic relationship between the type of item sold or offered for sale and the likelihood of purse snatching. If these were the only objectives of the ordinance, it would seem to be "patently discriminatory" to have an ordinance that "[p]eanuts, popcorn, [or] chewing

---

[7]Preliminarily we note that petitioner also complains of discriminatory enforcement. But our review is limited to the constitutionality of the ordinance on its face, not as it might be applied. (*In re Benson* (1985) 172 Cal.App.3d 532, 538 [218 Cal.Rptr. 384].) Whether an ordinance valid on its face has been applied in a discriminatory manner is a factual question. (*People* v. *Hirst* (1973) 31 Cal.App.3d 75, 85 [106 Cal.Rptr. 815].) "[I]n order to establish a claim of discriminatory enforcement a defendant must demonstrate that he has been deliberately singled out for prosecution on the basis of some invidious criterion." (*Murgia* v. *Municipal Court* (1975) 15 Cal.3d 286, 298 [124 Cal.Rptr. 204, 540 P.2d 44].)

gum . . . could be sold but a ticket cannot." (*People* v. *Van Wong* (1958) 165 Cal.App.2d Supp. 821, 824 [332 P.2d 872].)

The People claim there is no discrimination between vendors of tickets and other items because section 42.03 is part of a comprehensive scheme regulating soliciting and sales on public property. Section 42.00 generally prohibits the sale or offer to sell of "any goods, wares, or merchandise" upon any "roadways, parkways, alleys, and sidewalks." Petitioner validly points out, however, that the proscription in section 42.03 encompasses a greater area. ██ Section 42.03, subdivision (a), also extends the prohibition to solicitations or sales in parks or any "public place."[8] Such distinction could not withstand a rational basis test. Indeed if there were no other justification, this unequal treatment would not pass muster on equal protection or due process grounds.

In *Portnoy* v. *Hohmann* (1942) 50 Cal.App.2d 22 [122 P.2d 533], the Court of Appeal, in an analogous situation, held that a municipal code section (then § 4216) which merely prohibited distribution of handbills or other advertising matter relating to photographs was unconstitutional. The court pointed out that "there appears to be no substantial distinction between respondent's type of business and any other type of business which employs or which might employ such solicitation and distribution on the street." (50 Cal.App.2d at p. 24.) The *Portnoy* court concluded: "Upon its face the ordinance sets up an arbitrary and unreasonable classification of persons soliciting sales and distributing advertising matter upon the public streets not based upon any natural or constitutional difference, and therefore violates the constitutional guarantees of equal protection of the law and against deprivation of property without due process of law." (*Ibid.*)

There is, however, another justification put forward by the People for the ordinance. The city in its preamble enacting the ordinance cited as its first, and presumably foremost, problem that "the practice of selling and attempting to sell tickets of admission to places of public assemblage other than from regularly established ticket offices in public places and places open to the public continues with increasing frequency throughout the City and . . . . has resulted and continues to result in the sale of counterfeit tickets thereby defrauding the public." It is obvious that ticket vendors are not similarly situated to nonticket vendors with respect to the sale of counterfeit tickets. Protection of the public against fraud is of course a legitimate purpose. (See *Spiritual Psychic Science Church* v. *City of Azusa*

---

[8]Petitioner also complains that subdivision (b) of section 41.03 extends the proscription to "any place which is open to the public." But petitioner is charged only with violating subdivision (a) and therefore on this writ petition lacks standing to challenge subdivision (b).

(1985) 39 Cal.3d 501, 517 [217 Cal.Rptr. 225, 703 P.2d 1119].) ▆▆
Thus, the city can adopt a classification treating ticket vendors differently
and unequally with nonticket vendors with respect to a completed sale.

We therefore turn to the question of whether, given the exception for
ticket sellers in fixed booths, the city can validly prohibit other ticket sellers
from selling any tickets whatsoever in any public place. The city ordinance
could reasonably treat ambulatory commercial ticket sellers differently from
ticket sellers in permanently established booths. Although both the ambula-
tory ticket seller and the booth ticket seller are similar to each other and to
anyone who is interested in counterfeiting, in that they are out to make a
profit, they are not similarly situated otherwise with respect to the risk of
counterfeit tickets. The customer can go back later to complain to the ticket
seller in the fixed booth if there are any problems with his ticket. Not so with
the itinerant commercial ticket seller who may disappear without a trace
immediately after selling the ticket. We therefore have no difficulty in
upholding the ordinance against an equal protection challenge insofar as it
affects the itinerant ticket seller who is engaged in the business or "practice"
of selling tickets for a profit.

Moreover, such an ordinance regulating the right to engage in the lawful
occupation or "practice" of ticket selling by limiting the location of the sales
does not deprive the itinerant commercial ticket seller of his due process
property rights because the ordinance and the means selected are reasonably
related to the valid government purpose of protecting against counterfeiting
(See *Music Plus Four, Inc.* v. *Barnet* (1980) 114 Cal.App.3d 113, 131 [170
Cal.Rptr. 419].) Petitioner cannot prevail with his complaint that his due
process property rights are destroyed because there is no way he can practice
the lawful occupation of ticket selling. The ordinance does not prohibit the
sale of tickets on private property or the offer to sell them, for example, in
a newspaper advertisement. It only forbids his use of public property for the
practice of his private business.

▆▆ Furthermore, a legislature has broad powers to control the conduct
of commercial activity on public streets and sidewalks. "[T]he place for the
conduct of a private business is upon private property, for there is no vested
right to do business upon the public streets." (*San Francisco Street Artists
Guild* v. *Scott* (1974) 37 Cal.App.3d 667, 670 [112 Cal.Rptr. 502]; *Pittsford*
v. *City of Los Angeles* (1942) 50 Cal.App.2d 25, 32 [122 P.2d 535].)
"Municipal authorities, as trustees for the public, have the duty to keep their
communities' streets open and available for movement of the public and
property, the prime purpose to which streets are dedicated." (*San Francisco
Street Artists Guild, supra,* at p. 674.) "Streets and highways are for the use
of the travelling public, and, as members of the public, all persons in like

situation have equal rights to use the streets and highways in a reasonable manner in a customary way. [Citation.] However, the common right to use streets in the ordinary way is quite different from the right to use them as a place of business for private gain. Ordinary usage is the right of all, but there is no vested or constitutional right to subject a street to the conduct of private business . . . . Use of a public street for private enterprise . . . is a special privilege . . . which may be . . . entirely withheld." (*People* v. *Galena* (1937) 24 Cal.App.2d Supp. 770, 775 [70 P.2d 724].)

 Nonetheless, we perceive grave difficulties in the ordinance, whether delineated on grounds of equal protection or due process, in connection with the casual ticket holder. The ordinance permits commercial ticket sellers to make a profit by the "practice" of selling numerous tickets on the public street on a regular basis just because they are located in a booth. At the same time, it subjects to criminal penalties the individual citizen ticket holder who finds himself with one extra ticket and proceeds to sell or offer to sell it to another friend while in a public place, at face value or below, thus making no profit. Such a distinction has no rational basis.

The People in their briefs consistently claim the purpose of the statute is to prevent the use of the public street for private commercial purposes in order to avoid problems of traffic, assault, and counterfeiting. Yet such a person as a member of the public is basically only exercising "the common right to use streets in the ordinary way" which "is quite different from the right to use them as a place of business for private gain" since "[o]rdinary usage is the right of all. . . ." (*People v. Galena, ibid.*) Further, it would be obviously discriminatory "to hold that sales may be made at a ticket booth on the public grounds, but cannot be made in a single instance from a citizen's pocket. The former will give rise to the accumulation of crowds, the impedance of passage; the latter would do neither." (*People* v. *Van Wong, supra,* 165 Cal.App.2d Supp. at p. 824.) Moreover, the ordinance preamble repeatedly states that it is the "practice" of selling tickets on the street that is responsible for the increase in counterfeiting, traffic and assault problems.

It offends our sense of fairness to impose criminal penalties on the citizen who casually one-time disposes of his ticket anywhere on the public streets or parks of a city the size of Los Angeles without making any profit therefrom. The cardinal principle of substantive due process is that a law which deprives a person of life, liberty or property must not be the product of arbitrary legislative judgment. Such a law must be reasonably related to the object sought to be obtained by its enactment. (*People* v. *Armbruster* (1985) 163 Cal.App.3d 660, 664 [210 Cal.Rptr. 11].)

There is no such essential nexus here between the casual ticket holder who gets rid of an extra ticket and the legitimate goals of the ordinance.

The ordinance is however susceptible to a judicial construction curing this constitutional infirmity. ██ ██ To preserve the validity of the ordinance, we therefore narrowly construe the ordinance to its legitimate reach—the commercial ticket seller. (*Welton* v. *City of Los Angeles* (1976) 18 Cal.3d 497, 505-507 [134 Cal.Rptr. 668, 556 P.2d 1119]; see also *Pryor* v. *Municipal Court* (1979) 25 Cal.3d 238, 253-254 [158 Cal.Rptr. 330, 599 P.2d 636].)[9] We, therefore, hold that a defendant should be able to raise, as a defense to the charge of violating this ordinance, that he was not in the "practice" of selling tickets and did not make a profit from the sale in that case. As so construed, the ordinance, insofar as it bans the sale of tickets on public property, other than from fixed booths, is a valid exercise of the police power.

## III

### Freedom of Speech

██ ██ ██ Petitioner also claims the ordinance violates his "liberty of speech" under the United States and California Constitutions by prohibiting offers to sell on the public streets even if the transaction is later accomplished on private property.[10]

██ Commercial speech is not entitled to the same level of protection as noncommercial speech. (*Central Hudson Gas & Elec. Corp.* v. *Public Serv. Comm'n* (1980) 447 U.S. 557, 563 [65 L.Ed.2d 341, 349, 100 S.Ct. 2343]; *Spiritual Psychic Science Church* v. *City of Azusa, supra,* 39 Cal.3d at pp. 510-511.) ██ In order to determine the proper test by which to evaluate the ordinance under the Constitution, we must first determine whether "offer to sell" involves commercial or noncommercial speech.

---

[9]In *Welton* v. *City of Los Angeles, supra,* 18 Cal.3d 497, the court explained the governing rules of statutory construction: "First, the enactment may be validated if its terms are reasonably susceptible to an interpretation consistent with the Constitution. [Citations.] Second, the court should construe the enactment so as to limit its effect and operation to matters that may be constitutionally regulated or prohibited. [Citations. ] [¶] Both principles are limited by the further rule that judicial construction must not create uncertainty inhibiting exercise of a constitutional right." (*Id.,* at pp. 505-506.) It is obvious from the preamble to the ordinance, which repeatedly stressed the evils of certain "practices," that the ordinance at issue here is principally aimed at the sale of tickets in public places by the commercial ticket seller. Thus it can be saved by limiting its reach to sales by such commercial ticket sellers without substantially affecting its focus.

[10]Article I, section 2 of the California Constitution is "more definitive and inclusive than the First Amendment." (*Wilson* v. *Superior Court* (1975) 13 Cal.3d 652, 658 [119 Cal.Rptr. 468, 532 P.2d 116]; accord, *Spiritual Psychic Science Church, supra,* 39 Cal.3d at p. 519.)

We recognize that "[t]he essence of the issue of whether an activity falls within the constitutional protection of 'speech' is whether the 'speaker' by engaging in the activity is communicating information of any sort." (*Spiritual Psychic Science Church* v. *City of Azusa, supra,* 39 Cal.3d at p. 508.) We also recognize that "speech does not lose its protected character when it is engaged in for profit." (*Id.,* at p. 509.) There is no clearly articulated test to determine what constitutes commercial speech. (*Id.,* at p. 510.) In *Spiritual Psychic Science Church,* our Supreme Court pointed out that "commercial speech has been referred to as 'speech which does "no more than propose a commercial transaction" ' (*Va. Pharmacy Bd.* v. *Va. Consumer Council* [1976] 425 U.S. 748, 762 [48 L.Ed.2d 346, 358, 96 S. Ct. 1817], quoting from *Pittsburgh Press Co.* v. *Human Relations Comm'n.* (1973) 413 U.S. 376, 385 [37 L.Ed.2d 669, 677, 93 S.Ct. 2553]), and as 'expression related solely to the economic interests of the speaker and its audience.' (*Central Hudson Gas & Ele. Corp.* v. *Public Serv. Com'n,* [*supra*], 447 U.S. 557, 561 [65 L.Ed.2d 341, 348, 100 S.Ct. 2343])." (*Spiritual Psychic Science Church, supra,* 39 Cal.3d at p. 510.) The cases dealing with commercial speech all involve solicitation of sales and advertising—that is, speech proposing a commercial transaction. (*Ibid.*) Thus, it can be said that "commercial speech is that which has but one purpose—to advance an economic transaction" as contrasted with "noncommercial speech" which "encompasses activities extending beyond that purpose." (*Id.,* at p. 511.)

When petitioner or others engage in the business of reselling tickets by offering to sell tickets to a ball game or other public assemblage, the consideration or price obtained is the sole object of the communication. Thus, unlike the fortune-teller who charges a fee (see *Spiritual Psychic Science Church, supra,* 39 Cal.3d 501) or the street vendor of maps to stars' homes (see *Welton* v. *City of Los Angeles, supra,* 18 Cal.3d 497), the speech involved here—the offer to sell—is commercial speech.

In *Posadas de Puerto Rico Assoc.* v. *Tourism Co.* (1986) 478 U.S. 328 [92 L.Ed.2d 266, 279-280, 106 S.Ct. 2968], the Supreme Court set forth the test for evaluating First Amendment implications of commercial speech: "Because this case involves the restriction of pure commercial speech. . . our First Amendment analysis is guided by the [following] general principles identified in Central Hudson Gas & Electric Corp. v. Public Service Comm'n, 447 US 555. . . . [C]ommercial speech receives a limited form of First Amendment protection so long as it concerns a lawful activity and is not misleading or fraudulent. Once it is determined that the First Amendment applies to the particular kind of commercial speech at issue, then the speech may be restricted only if the government's interest in doing so is substantial, the restrictions directly advance the government's asserted

interest, and the restrictions are no more extensive than necessary to serve that interest."

 We agree with the People that there is "no First Amendment interest when 'the commercial activity itself is illegal.' " (*San Jose Country Club Apartments* v. *County of Santa Clara* (1982) 137 Cal.App.3d 948, 955 [187 Cal.Rptr. 443].) But, the particular kind of commercial speech at issue here, namely, the offer to sell tickets of admission, concerns a lawful activity and is not misleading or fraudulent, at least in the abstract. We, therefore, must proceed to the remaining steps of the U.S. Supreme Court's analysis to determine whether the ordinance's restrictions on offers to sell tickets "run afoul of the First Amendment." (*Posadas, supra,* 478 U.S. at p. __ [92 L.Ed.2d at p. 280].)

The first of these three steps involves an assessment of the strength of the government's interest in restricting the speech. (*Ibid.*) Here, the interests asserted included protection against counterfeiting—a fraudulent activity— and avoiding traffic congestion on the public streets. Protection of citizens from fraud is an important state interest. (*Spiritual Psychic Science Church, supra,* 39 Cal.3d at p. 517.) Also "[g]overnmental regulation of street traffic is clearly a legitimate exercise of the police power." (*Welton* v. *City of Los Angeles, supra,* 18 Cal.3d at p. 504.) We therefore have no difficulty in concluding that the city has a substantial governmental interest.

We then turn to the last two steps which "basically involve a consideration of the 'fit' between the legislature's ends and the means chosen to accomplish those ends. Step three asks whether the challenged restrictions on commercial speech 'directly advance' the government's asserted interest." (*Posadas, supra,* 478 U.S. at p. __ [92 L.Ed.2d at p. 281].) The fourth step is "whether the restrictions on commercial speech are no more restrictive than necessary to serve the government's interest." (*Id.,* at p. __ [92 L.Ed.2d at p. 282].)

We have no difficulty in determining that the prohibition of an offer to sell where both the solicitation and the completed transaction occur on public property by a ticket seller in the "practice" or business of ticket selling directly advances the city's asserted interest in preventing counterfeiting and that it is no more restrictive than is necessary to accomplish the legitimate goal.

On the other hand, we encounter serious difficulty in determining that the ordinance passes muster insofar as the ordinance is deemed to ban any offer on the public streets, notwithstanding that the actual sales transaction takes

place on private property, or by a one-time casual ticket holder who is neither in the business or practice of ticket selling nor out to make a profit.

First Amendment issues attend a statute which prohibits solicitation of lawful acts. (*Pryor* v. *Municipal Court, supra,* 25 Cal.3d at p. 254.) Moreover, "[a] regulation is suspect . . . if it prohibits protected expression, even though it also guards the public from fraud." (*Spiritual Psychic Science Church* v. *City of Azusa, supra,* 39 Cal.3d at p. 515.) There is no ban on the sale of tickets on private property. A ban on a public offer to make such a private sale would only indirectly advance the risk of counterfeiting, traffic congestion, and assault and would be overinclusive. Furthermore, we have already held (see *ante,* at pp. 18-19) that the city's wholesale ban on an individual ticket holder's disposing of his extra ticket at face value or below anywhere on public property in the entire City of Los Angeles would be unconstitutional. Since the act is legal, the necessary words to accomplish it are also legal. It is questionable whether the government can constitutionally punish nonobscene solicitations of lawful acts which are not inherently likely to provoke a breach of the peace. (See *Pryor* v. *Municipal Court, supra,* 25 Cal.3d at p. 255, fn. 11.)[11]

In order to save the ordinance as a whole, we "construe the enactment so as to limit its effect and operation to matters that may be constitutionally . . . prohibited." (See *Welton* v. *City of Los Angeles, supra,* 18 Cal.3d at p. 505.) We, therefore, limit the phrase of "offer to sell or resell" in this ordinance to apply only to ticket sellers in the business or practice of selling tickets where both the solicitation and the proposed sale are on public property.

Accordingly, since we have construed the ordinance to be constitutional, we affirm the judgment of the appellate department of the superior court.

### Disposition

The judgment of the Appellate Department of the Superior Court of Los Angeles County is affirmed and the cause is remanded for further proceed-

---

[11]The People rely on *People* v. *Shepherd* (1977) 74 Cal.App.3d 334 [141 Cal.Rptr. 379], where the court upheld the misdemeanor conviction of an ordinary ticket holder who was offering to sell a few extra tickets he had at face value at the Coliseum. The *Shepherd* court upheld the ordinance as not a due process violation and as a reasonable, time, place and manner restriction on commercial speech. *Shepherd* is distinguishable in that the ordinance at issue there (since repealed) did not discriminate between ticket vendors and all other itinerant vendors and was also limited in scope, banning such offers and sales on the Coliseum property or parks and not everywhere on any public property throughout the entire City. Moreover, insofar as *Shepherd* is on point, we find the *Shepherd* rationale unpersuasive.

ings consistent with the views expressed herein. The stay issued herein April 16, 1986, is vacated.

Lillie, P. J., and Johnson, J., concurred.

A petition for a rehearing was denied January 29, 1987, and petitioner's application for review by the Supreme Court was denied March 17, 1987.