NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 06a0752n.06
Filed: October 11, 2006

05-5923

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

| | | |
|---|---|---|
| CRAIG A. WILSON, Individually and on Behalf of a Class of Persons Similarly Situated, | ) ) ) ) | |
| Plaintiff-Appellant, | ) ) | ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF KENTUCKY |
| v. | ) ) | |
| LEXINGTON-FAYETTE URBAN COUNTY GOVERNMENT, | ) ) ) | |
| Defendant-Appellee. | ) | |

Before: SILER, DAUGHTREY, and ROGERS, Circuit Judges.

**PER CURIAM.** The plaintiff, Craig Wilson, appeals the district court's denial of a preliminary injunction against the enforcement of an ordinance that prohibited peddling in certain areas near Rupp Arena before and after ticketed events at the arena. In a putative class action filed under 42 U.S.C. § 1983, Wilson claimed that the defendant had violated his free speech rights under the First and Fourteenth Amendments. The district court found that the plaintiff failed to establish a likelihood of success on the merits as a basis for denying the request for a preliminary injunction. We find no reversible error and affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

This litigation resulted from Wilson's arrest and citation for violating the local anti-peddling ordinance after he offered to sell two University of Kentucky basketball tickets to two people who approached him outside Rupp Arena on the night of a home game. Wilson did not need the tickets, and his asking price was below the face value of the tickets. Unbeknown to him, the two purchasers were undercover Lexington police officers, who charged Wilson with violation of Lexington-Fayette Urban County Government Ordinance § 15-1.1, which prohibits peddling within the area bounded by the streets that surround the arena and parking lots. The ordinance, as then in effect,[1] stated, in relevant part:

> (2) It shall be unlawful for any peddler to sell, or offer for sale, food or goods while in the Lexington Center area, at any time during the two (2) hours preceding a ticketed Rupp Arena event or during the one (1) hour following a Rupp Arena event. Goods shall include tickets to any event taking place in Rupp Arena.
>
> (3) Any peddler who shall sell or offer for sale food or goods in violation of this section shall be fined not to exceed two hundred fifty dollars ($250.00) or be imprisoned for a period not to exceed seven (7) days, or be both so fined and so imprisoned.

Ordinance § 13-1(28) defines a peddler as one "who carries his merchandise with him while traversing the streets, sidewalks or alleys of Fayette County for the purpose of exhibiting and selling such merchandise." Peddling is recognized as an occupation under

---

[1]The Council of the Lexington-Fayette Urban County Government amended § 15-1.1(2) of the Code of Ordinances, effective January 12, 2006, to replace the word "peddler" with "person."

the licensing ordinance, § 13-13, and requires a license fee of either $10 per day or $250 per year along with a $500 indemnity bond. The plaintiff pleaded guilty to the violation.

Wilson then filed suit in federal court, alleging that he was not a "peddler" and claiming that the ordinance, both on its face and as applied, violated his right of free speech, deprived him of his property without due process, violated his Fourth Amendment right against unlawful search and seizure, and resulted in the conversion of his property under state law. The complaint sought declaratory and injunctive relief as well as class-action status. On the same day, the plaintiff filed a motion for a preliminary injunction enjoining the defendant from enforcing the ordinance.

The district court denied Wilson's preliminary injunction request, determining that the plaintiff was not likely to succeed on the merits of his claim. First, the district judge noted that Wilson had admitted to being a "peddler" under the ordinance when he entered his guilty plea in state court. Furthermore, the court rejected the plaintiff's assertion that he could not be considered to be a "peddler" under § 15-1.1 because peddling was listed in an unrelated local ordinance concerned with *occupational* licensing, and Wilson's "occupation" was not peddling. Instead, the court focused upon the § 13-1(28) definition of "peddler," a definition that clearly encompassed the plaintiff's activities.

In considering the plaintiff's First Amendment claim, the court found that the ordinance was a narrowly-tailored, content-neutral time, place, and manner restriction that was not unconstitutional and, therefore, that plaintiff was also not likely to succeed on the

merits of this claim. Finally, the court ruled that the plaintiff had not elucidated the portion of the ordinance that he claimed was vague and found, to the contrary, that the language in the ordinance was clear and specific.

## DISCUSSION

We review the denial of a preliminary injunction for an abuse of discretion, *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 387 F.3d 522, 532 (6th Cir. 2004), and we will disturb the decision of the district court "only if the district court relied upon clearly erroneous findings of fact, improperly applied the governing law, or used an erroneous legal standard." *Blue Cross & Blue Shield Mut. of Ohio v. Blue Cross and Blue Shield Ass'n*, 110 F.3d 318, 322 (6th Cir. 1997). On review, we consider:

> (1) the likelihood that the party seeking the preliminary injunction will succeed on the merits of the claim; (2) whether the party seeking the injunction will suffer irreparable harm without the grant of the extraordinary relief; (3) the probability that granting the injunction will cause substantial harm to others; and (4) whether the public interest is advanced by the issuance of the injunction.

*United States v. Edward Rose & Sons*, 384 F.3d 258, 261 (6th Cir. 2004) (citation omitted). These factors "do not establish a rigid and comprehensive test for determining the appropriateness of preliminary injunctive relief." *Frisch's Rest., Inc. v. Shoney's Inc.*, 759 F.2d 1261, 1263 (6th Cir. 1985) (citing *Tate v. Frey*, 735 F.2d 986, 990 (6th Cir. 1984)). Instead, they are "factors to be balanced, not prerequisites that must be met." *Frisch's*, 759 F.2d at 1263 (citations omitted). "Although no one factor is controlling, a finding that

there is simply no likelihood of success on the merits is usually fatal." *Gonzales v. Nat'l Bd. of Med. Examiners*, 225 F.3d 620, 625 (6th Cir. 2000) (citation omitted). In this case, we find that the plaintiff has failed to establish the likelihood of success with regard to any of his four challenges to the ordinance.

## A. Whether the Ordinance Applies to the Plaintiff's Conduct

The plaintiff contends that he is not a "peddler" because he was involved in a one-time ticket sale and would make such a sale again only, at most, on a sporadic, spontaneous basis, as opposed to engaging in an on-going enterprise or "occupation." He claims that the city's interpretation of the ordinance is constitutionally flawed because it criminalizes non-occupational peddling. The city counters that by pleading guilty to a violation of the ordinance, the plaintiff is now precluded from denying that he was subject to the prohibition in the ordinance.

Without regard to the occupational licensing requirements of § 13-13, we conclude that Wilson's conduct qualifies as "peddling," *i.e.*, "carr[ying] his merchandise with him while traversing the streets . . . for the purpose of exhibiting and selling such merchandise." § 13-1(28). Although the plaintiff's brief relies upon Kentucky Revised Statute § 68.197 for the proposition that a city "can only impose a license fee upon businesses, trades, occupations, professions," that statute actually defines the power of the fiscal court of a *county* with more than 30,000 persons to provide for licensing "any business, trade, occupation, or profession. . . ." It does not, therefore, indicate any limitation on local

regulation of peddling. Furthermore, although Kentucky Revised Statute §§ 365.650-365.695 impose regulations on "transient merchants," the legislation also provides that "[n]othing in this chapter shall be construed to limit the authority of counties or cities to levy additional license fees and require additional bonding for transient merchants engaging in business in such counties or cities and *to otherwise regulate transient merchants engaging in business in such counties or cities.*" Ky. Rev. Stat. § 365.695 (emphasis added). Based on these state law provisions, and the broad wording of the no-peddling ordinance, we conclude that the plaintiff failed to establish a strong likelihood of success on his claim that the ordinance did not apply to his conduct.

Moreover, Wilson's claim is further weakened by the fact that he pleaded guilty to a violation of the ordinance, thereby conceding, as one of the elements of the offense, that he was a peddler. In so doing, he forfeited the opportunity to litigate that issue in state court and is, therefore, now precluded from attacking that judgment in federal court under the holding of *Donovan v. Thames*, 105 F.3d 291, 293-94 (6th Cir. 1997), in which we recognized the preclusive effect of state court criminal proceedings on subsequent federal actions. Relying on decisions of the Kentucky Supreme Court and Court of Appeals, as well as the United States Supreme Court's decision in *Allen v. McCurry*, 449 U.S. 90, 102 (1980), we held that where a federal plaintiff has a full and fair opportunity to litigate a constitutional claim in his state court prosecution, he is precluded from re-litigating that issue in federal court. *See Donovan*, 105 F.3d at 298. Thus, under the reasoning of *Donovan*, the plaintiff here is barred from re-litigating whether he is, in fact, a peddler within

the meaning of the ordinance by virtue of his having entered a guilty plea to that element

of the violation and a state court having rendered final judgment.

**B.  Whether the Ordinance is Unconstitutionally Vague**

In his challenge to the ordinance on vagueness grounds, the plaintiff claims that

casually selling or offering to sell his extra tickets at or below face value is not peddling

and, therefore, that a definition of "peddler" that would include Wilson's conduct must be

considered vague.  We analyze this contention under the rubric of such cases as *Belle*

*Maer Harbor v. Charter Twp. of Harrison*, 170 F.3d 553, 556-57 (6th Cir. 1999), in which

we observed:

> The Due Process Clauses of the Fifth and Fourteenth Amendments provide the constitutional foundation for the void-for-vagueness doctrine.  A vague ordinance violates the Constitution in two significant respects: such an ordinance fails, (1) to define the offense with sufficient definiteness that ordinary people can understand prohibited conduct, and (2) to establish standards to permit police to enforce the law in a non-arbitrary, non-discriminatory manner. The second prong - providing minimal guidelines to govern the conduct of law enforcement - constitutes the more important aspect of the vagueness doctrine. This reflects the common sense understanding that the average citizen does not read, at his leisure, every federal, state, and local statute to which he is subject.  An enactment imposing criminal sanctions or reaching a substantial amount of constitutionally protected conduct may withstand facial constitutional scrutiny only if it incorporates a high level of definiteness.

(Citations and quotation marks omitted.)

The language of Ordinance § 15-1.1 does not run afoul of these considerations. As noted above, a "peddler" is defined as "[a]n individual who carries his merchandise with him while traversing the streets, sidewalks or alleys of Fayette County for the purpose of exhibiting and selling such merchandise." Ordinance § 13-1(28). The no-peddling ordinance prohibits such a person from "sell[ing], or offer[ing] for sale, . . . goods while in the Lexington Center area, at any time during the two (2) hours preceding a ticketed Rupp Arena event or during the one (1) hour following a Rupp Arena event," and defines "goods" to include tickets to any event taking place in Rupp Arena. Given these specifics, the ordinance cannot be considered vague.

## C. <u>Whether the Ordinance Constitutes an Unconstitutional Prior Restraint</u>

The plaintiff alleges that the ordinance "is being interpreted to require a purchase of a peddler's license and posting of a $500 indemnity bond" by those who are "engage[d] in a one time sale of their own personal property" but are "not in the business of selling." He argues that the ordinance, because it permits local officials unbridled discretion to determine whether and to whom to grant a peddler's license, constitutes an unconstitutional prior restraint on speech. In response, the defendant contends that the ordinance's definition of "peddler" makes clear who is required to have a permit, that the licensing scheme does not permit any discretion in the granting of peddling licenses, and that it therefore does not constitute an unconstitutional restraint. We agree.

"A 'prior restraint' exists when the exercise of a First Amendment right depends on the prior approval of public officials." *Bronco's Entm't, Ltd. v. Charter Twp. of Van Buren*, 421 F.3d 440, 444 (6th Cir. 2005) (citing *Deja Vu of Nashville, Inc. v. Metro. Gov't of Nashville*, 274 F.3d 377, 400 (6th Cir. 2001)). Such restraints are presumed to be invalid because of the "risk of censorship associated with the vesting of unbridled discretion in government officials" and "'the risk of indefinitely suppressing permissible speech' when a licensing law fails to provide for the prompt issuance of a license." *Nightclubs, Inc. v. City of Paducah*, 202 F.3d 884, 889 (6th Cir. 2000) (citation omitted). However, the Supreme Court has ruled that "[t]he Constitution . . . accords a lesser protection to commercial speech[, that is, expression related solely to the economic interests of the speaker and its audience,] than to other constitutionally guaranteed expression." *Cent. Hudson Gas & Elec. Corp. v. Pub. Serv. Comm'n of New York*, 447 U.S. 557, 563 (1980). Moreover, "laws of general application that are not aimed at conduct commonly associated with expression and do not permit licensing determinations to be made on the basis of ongoing expression or the words about to be spoken, carry with them little danger of censorship." *City of Lakewood v. Plain Dealer Publ'g Co.*, 486 U.S. 750, 760-761 (1988).

The definition of "peddler" provided by the ordinance is very clear and, contrary to the plaintiff's contention, would not force "persons of common intelligence . . . [to] guess at its meaning and differ as to its application." *Connally v. Gen. Constr. Co.*, 269 U.S. 385, 391 (1926). There is no showing that it offers any room for interpretation or discretion in the application of the licensing requirement. It provides that those who pay the fee and the

bond shall be granted a license. We conclude that the district court correctly found that there was no substantial likelihood that the plaintiff would succeed on this First Amendment claim.

## D. <u>Whether the Ordinance is Narrowly Tailored</u>

The plaintiff's final claim on appeal is that the district court erred in ruling that the ordinance was narrowly tailored and, therefore, constitutional. The defendant responds that the ordinance is within the police powers granted to the local government by Kentucky law and, further, that it is a valid "time, place, and manner" restriction, sufficiently narrowly tailored to serve legitimate government interests while at the same time leaving open ample alternative channels for the communication of speech by the plaintiff. We agree.

"Speech advancing commercial transactions falls within an ambit that is 'traditionally subject to government regulation.'" *NLRB v. Midland Daily News*, 151 F.3d 472, 474 n.2 (6th Cir.1998), (quoting *Ohralik v. Ohio State Bar Ass'n*, 436 U.S. 447, 456 (1978)). In *Central Hudson Gas & Electric*, the Supreme Court articulated the proper analysis to be undertaken when reviewing a regulation of commercial speech:

> In commercial speech cases . . . , we must [first] determine whether the expression is protected by the First Amendment. For commercial speech to come within that provision, it at least must concern lawful activity and not be misleading. Next, we ask whether the asserted governmental interest is substantial. If both inquiries yield positive answers, we must determine whether the regulation directly advances the governmental interest asserted, and whether it is not more extensive than is necessary to serve that interest.

447 U.S. at 566.  *See also Midland Daily News*, 151 F.3d at 474-475; *Cleveland Area Bd. of Realtors v. City of Euclid*, 88 F.3d 382, 385 (6th Cir. 1996).  Under this standard, the defendant was able to make a showing at the preliminary injunction stage that the ordinance advances its interest in regulating traffic in public areas to ensure public safety. Moreover, the prohibition imposed by the ordinance is limited to the sidewalks and parking lots adjacent to the arena and to the time immediately before and immediately after an arena event.

On appeal, the plaintiff points to *Weinberg v. City of Chicago*, 310 F.3d 1029 (7th Cir. 2002), to support his position to the contrary.  In that decision, the appellate court ruled that a municipal ordinance that prohibited all sales within 1000 feet of a downtown sports arena, except for newspapers, was not narrowly tailored.  However, that ordinance differs from the one challenged by the plaintiff here in two very important respects: it encompassed a far more pedestrian area than does the Lexington ordinance, and it did not have *any* reasonable time restrictions.  We find it distinguishable on these bases alone.

The plaintiff also relies on *Loska v. Superior Court of Los Angeles County*, 233 Cal. Rptr. 213 (Ct. App. 1986), in which the California Court of Appeal invalidated a municipal ordinance that prohibited all sales of and offers to sell tickets on public streets.  The ordinance in that case, however, applied at all times and to all public thoroughfares.  *Id.* at 575.  The ordinance now before us is not so universal in its application and is more narrowly drawn than was the California regulation.

We likewise find no merit to the plaintiff's complaint that the district court simply accepted "the unsupported assertion of the City's counsel that the Ordinance was enacted to ensure public safety" without requiring the defendant to present "contemporaneous evidence of the purpose the Ordinance was enacted to further." In this regard, the plaintiff confuses what the defendant must adduce in order to defeat the claim on the merits with the showing necessary to withstand an applicaiton for a preliminary injunction. At this initial stage, each party must offer some *prima facie* demonstration of the likelihood of its success on the merits from which the district court may weigh the four relevant factors to reach a decision. The plaintiff has not made a showing of likely success on this claim and, therefore, the district court did not abuse its discretion in denying the preliminary injunction.

## **CONCLUSION**

Although it is true, as the plaintiff points out, that the district court's opinion deals only with the first of the four factors relevant to the issuance of a preliminary injunction, it is equally true that the defendant has prevailed on the weightiest of the four. *See Gonzales*, 225 F.3d at 625. Moreover, the plaintiff has failed to make a showing that the remaining factors would both weigh in his favor and outweigh the factor that the court decided in the defendant's favor. We find no abuse of discretion in the denial of a preliminary injunction and AFFIRM the district court's ruling. The case is REMANDED to the district court for further proceedings.

*05-5923*
*Wilson v. Lexington-Fayette Urban County*