**FLYING DOG BREWERY, LLLP, Plaintiff,**

v.

**MICHIGAN LIQUOR CONTROL COMMISSION, et al., Defendants.**

**Case No. 1:11–CV–307.**

United States District Court, W.D. Michigan, Southern Division.

June 28, 2012.

Alan Gura, Gura & Possessky PLLC, Alexandria, VA, for Plaintiff.

Donald S. McGehee, Gerald A. Whalen, MI Dept. Attorney General, Lansing, MI, Melinda A. Leonard, Rosendo Asevedo, Jr., MI Dept. Attorney General, Southfield, MI, for Defendants.

### OPINION AND ORDER

ROBERT J. JONKER, District Judge.

This case arises out of Defendant Michigan Liquor Control Commission's (the "Commission") initial denial of Plaintiff's application for a license to sell its "Raging Bitch" beer in Michigan. The Commission initially determined that Plaintiff's label was "detrimental to the health, safety, or welfare of the general public," in violation of MICH. ADMIN. CODE R. 436.1611(1)(c). Plaintiff sued under 42 U.S.C. § 1983 for both injunctive relief against the Commission, and for damages against the five commissioners (the "Commissioners") in office when Plaintiff's licensing application was denied. The Commission later issued an administrative order reversing its previous orders, rescinding the beer-labeling rule underpinning their earlier decision, and granting Plaintiff's request for a license to sell Raging Bitch beer in Michigan. (docket # 33–2.) The Commission's action mooted Plaintiff's request for injunctive relief. (docket # 43.) All that remains are Plaintiff's claims for damages against the Commissioners in their individual capacities. Before the Court is Defendants' Motion to Dismiss the claims against the Commissioners based on absolute quasi-judicial immunity, or in the alternative, qualified immunity (docket # 53), and Plaintiff's Motion for Partial Summary Judgment Regarding Liability (docket # 56). After reviewing all matters of record, the Court **GRANTS** Defendants' Motion, and **DENIES** Plaintiff's Motion.

### BACKGROUND

Under Michigan law, the Commission has the "sole right, power, and duty to

control the alcoholic beverage traffic" within the State, including regulating the sale of alcoholic beverages such as beer, wine, and liquor. MICH. COMP. L. § 436.1201(2). The Commission is comprised of five members. Three of the members—the Administrative Commissioners—have the responsibility for decisions "relating to licensing . . . merchandising, and distribution." *Id.* § 436.1209(2). The other two members—the Hearing Commissioners—have no role in the licensing process, but rather hear and decide violation cases relating to existing rules and regulations promulgated by the State legislature and the Commissioners. (*Id.*) At all times relevant to this litigation, Defendants Nida Simona, Patrick Gagliardi, and Donald Weatherspoon served as Administrative Commissioners, and Defendants Colleen Pobur and Edward Gaffney served as Hearing Commissioners. (Compl., docket # 1, at ¶ 18.)

Before beer can be sold in Michigan, it must receive Commission approval. MICH. ADMIN. CODE R. 436.1611(1)(c). On September 17, 2009, Plaintiff applied for a license to sell "Raging Bitch" beer, a Belgian-style India Pale Ale. On November 18, 2009, the three Administrative Commissioners denied Plaintiff's application, reasoning that the label contained material that was "detrimental to the health, safety, or welfare of the general public." (docket # 11–2.) The denial was made under the beer-labeling rule in effect at the time, which granted the Commission the authority to "disapprove any beer label submitted for registration that is deemed to promote violence, racism, sexism, intemperance, or intoxication or to be detrimental to the health, safety, or welfare of the general public." MICH. ADMIN. CODE R. 436.1611(1)(c)(before the amendment effective October 19, 2011). Plaintiff requested an appeal hearing, which a two-member majority of the Administrative Commissioners conducted. (docket # 11–3.) After the hearing, the Administrative Commis-

sioner's original decision was affirmed for substantially the same reasons. (docket # 11–4.) At no time were the two Hearing Commissioners involved in the decision to deny Plaintiff its license to sell.

On March 25, 2011, Plaintiff filed this action against Defendants, alleging the Commission's decision violated Plaintiff's First Amendment rights. (docket # 1.) The Complaint sought injunctive relief preventing the enforcement of Rule 436.1611(1)(c) against Plaintiff and compensatory damages against the Commissioners in their individual capacities. (*Id.*) While this case was pending, the Administrative Commissioners revised their prior decision in light of *Sorrell v. IMS,* — U.S. ——, 131 S.Ct. 2653, 180 L.Ed.2d 544 (2011). (docket # 54, at 11.) Following this review, the Administrative Commissioners decided to approve the "Raging Bitch" label for use in connection with Michigan beer sales and to rescind Rule 436.1611(1)(c), as well as the analogous rules that applied to labeling wine and spirits. (docket ## 39–1, 39–2.) As a result of Defendants' actions, Plaintiff withdrew its then-pending Motion for a Preliminary Injunction. The parties agree that Plaintiff's claims for damages against the Commissioners in their individual capacities are the only claims that remain in dispute, and are the subject of the Motions currently before the Court.

## ANALYSIS

Defendants argue that they are immune from Plaintiff's claims for damages. The Administrative Commissioners argue that they were acting in a quasi-judicial role when they denied the application based on Rule 436.1611(1)(c), and are therefore entitled to absolute immunity from Plaintiff's claims against them. Alternatively, the Administrative Commissioners assert that qualified immunity requires dismissal of Plaintiff's claims, because their actions

were not prohibited by any clearly established law. The Hearing Commissioners argue that they too are entitled to quasi-judicial or qualified immunity, but that the claims against them also fail on the merits because they were not in any way involved in the licensing decision at issue. Plaintiff counters that neither immunity doctrine applies to shield the Commissioners from liability, and that because all of the Commissioners are involved in what Plaintiff views as an unconstitutional licensing procedure, they must all be held personally liable for their actions. The Court addresses each Motion below.

## A. Standard of Review

Defendants argue dismissal of Plaintiff's claims is appropriate under Fed.R.Civ.P. 12(b), 12(c), and 56. With respect to the applicable standard of review, Plaintiff argues that the Court must confine its analysis to the Rule 56 standard of review because Defendant's Motion relies in part on affidavits from both Hearing Commissioners in arguing for dismissal, which incorporate facts into the record that would be outside the proper scope of Rule 12(b)(6) and 12(c). As a practical matter, the standard of review will not materially impact the analysis, given that the parties agree on the facts germane to the Court's Opinion. In an abundance of caution, however, the Court will treat Defendant's Motion as a motion for summary judgment under Rule 56, so as to consider all evidence of record. Of course, Plaintiff's Motion for Summary Judgment implicates the same standard.

Summary judgment is appropriate when there are genuine issues of material fact and the moving party is entitled to judgment as a matter of law. *Jones v. Potter*, 488 F.3d 397, 402 (6th Cir.2007); FED. R.CIV.P. 56. A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liber-*

*ty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). In considering a motion for summary judgment, the Court must draw all reasonable inferences in favor of the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). The ultimate question is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251–52, 106 S.Ct. 2505.

## B. The Hearing Commissioners are entitled to summary judgment because they did not personally participate in the licensing decision.

Before discussing the applicability of Defendants' asserted immunity defenses, the Court first addresses the claims against the Hearing Commissioners, Defendants Pobur and Gaffney. The Hearing Commissioners were not in any way involved in the decision to deny Plaintiff's licensing application, as their primary responsibility is "to hear violation cases arising from the obligations imposed on licensees under the Code and the Commission's administrative rules." (Pobur Aff., docket # 54–2, at ¶ 3; Gaffney Aff., docket # 54–3, at ¶ 3.) Consequently, the Hearing Commissioners argue the claims against them must necessarily fail, because they took no action that could have even arguably violated Plaintiff's First Amendment rights.

Plaintiff admits that the Hearing Commissioner's were not involved in the application denial, but argues that claims against them individually remain appropriate because "they hear violation cases and stood ready to punish any importer, distributor, or seller of unlicensed RAGING BITCH." (docket # 63, at 12.) In essence, Plaintiff argues that the mere threat of

possible action on the part of the Hearing Commissioners in the event Plaintiff for some reason decided to sell its product without a license states a cognizable basis for its First Amendment claim.

■ Plaintiff's argument is unpersuasive. To hold the Hearing Commissioners liable, Plaintiff must demonstrate that "each defendant, through the official's own individual actions, has violated the Constitution." *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937, 1948, 173 L.Ed.2d 868 (2009). A claimed violation must be based upon active unconstitutional behavior, and cannot be based on a mere failure to act. *See Copeland v. Machulis*, 57 F.3d 476, 481 (6th Cir.1995) (citations omitted); *Walton v. City of Southfield*, 995 F.2d 1331, 1340 (6th Cir.1993); *see also Grinter v. Knight*, 532 F.3d 567, 575 (6th Cir.2008); *Greene v. Barber*, 310 F.3d 889, 899 (6th Cir.2002). In this case, the sole basis for Plaintiff's requested relief against the Hearing Commissioners arises out of the decision of the Administrative Commissioners to deny Plaintiff's licensing application.[1] The Hearing Commissioners had no vote or other formal input in the decision, and the record is devoid of any informal influence that could even arguably serve as a proper basis for their claim. The threat of possible enforcement arising from a possible violation by Plaintiff involving conduct that has yet to occur is simply too tenuous. Plaintiff's damages claims against the Hearing Commissioner's in

their individual capacities consequently fail as a matter of law.

## C. Quasi-judicial immunity bars Plaintiff's damages claims against the Commissioners.

"Few doctrines [are] more solidly established at common law than the immunity of judges from liability for damages for acts committed within their judicial jurisdiction...." *Pierson v. Ray*, 386 U.S. 547, 553–54, 87 S.Ct. 1213, 18 L.Ed.2d 288 (1967). Recognizing absolute immunity from suit was "essential to protect the integrity of the judicial process," courts have long applied this doctrine to shield judges from personal liability for decisions made in their capacity as judicial officers. *Cleavinger v. Saxner*, 474 U.S. 193, 200, 106 S.Ct. 496, 88 L.Ed.2d 507 (1985); *see also Bradley v. Fisher*, 13 Wall. 335, 337 20 L.Ed. 646 (1872). The Supreme Court has extended this absolute immunity "to certain others who perform functions closely associated with the judicial process," including federal hearing examiners, administrative law judges, and state parole board officials, amongst others. *Cleavinger*, 474 U.S. at 200, 106 S.Ct. 496 (citing *Butz v. Economou*, 438 U.S. 478, 513, 98 S.Ct. 2894, 57 L.Ed.2d 895 (1978) (federal hearing examiner and administrative law judge)).

■ When determining whether this "quasi-judicial" immunity applies, courts

---

1. In the Complaint, Plaintiff argues that Rule 436.1611(1)(c) is unconstitutional on its face, and at least implicitly asserts a money damages claims against the Commissioners in their individual capacities based on the promulgation of the Rule itself. (docket # 1.) Plaintiff has since abandoned this argument (to the extent it was made in the Complaint), stating that "Flying Dog has never sought damages for the act of creating or adopting the former rule under which its speech was censored." (docket # 63, at 31.) Plaintiff further asserts that the Rule was "adopted many years ago, without the involvement of the individual Defendants from whom damages are sought." (*Id.*) Even if the current Commissioners were involved in the rulemaking, however, the Court doubts such a claim could survive as a matter of law, given the likely applicability of legislative immunity to what appears on its face to be a legislative activity—the promulgation of rules and regulations in accordance with Michigan law. *See Bogan v. Scott-Harris*, 523 U.S. 44, 118 S.Ct. 966, 140 L.Ed.2d 79 (1998) (summarizing and applying the doctrine of legislative immunity).

take a functional approach, considering "the nature of the function performed, not the identity of the actor who performed it." *Buckley v. Fitzsimmons,* 509 U.S. 259, 269, 113 S.Ct. 2606, 125 L.Ed.2d 209 (1993). Courts consider several factors "as characteristic of the judicial process," including:

> "(a) the need to assure that the individual can perform his functions without harassment or intimidation; (b) the presence of safeguards that reduce the need for private damages actions as a means of controlling unconstitutional conduct; (c) insulation from political influence; (d) the importance of precedent; (e) the adversary nature of the process; and (f) the correctability of error on appeal."

*Cleavinger,* 474 U.S. at 202, 106 S.Ct. 496 (citing *Butz,* 438 U.S. at 512, 98 S.Ct. 2894). When the proceedings at issue are functionally comparable to judicial proceedings, the individual official involved is immune from liability. *Id.*

■ To date, the Sixth Circuit has not directly addressed whether individuals comprising an administrative body vested with making discretionary licensing decision, such as the Administrative Commissioners in this case, are entitled to quasi-judicial immunity. However, the Sixth Circuit has applied the doctrine in other contexts that the Court considers instructive. In *Watts v. Burkhart,* 978 F.2d 269 (6th Cir.1992), the Sixth Circuit resolved a split within the Circuit when it granted quasi-judicial immunity to members of the Tennessee state medical-licensing board regarding their decision to suspend or revoke a physician's license. The Sixth Circuit relied on several factors in reaching its decision, including that Tennessee law allowed the aggrieved party to seek review of the board's decision in state court; the board afforded adequate notice and due process within the process; and the board

member functioned as a review and disciplinary body, independent of the influence of the governor that appointed them. *See id.* at 275–78. Relying on *Watts,* the Sixth Circuit also extended quasi-judicial immunity to the members of the Kentucky Education Professional Standards Board when the Board was deciding whether to suspend a teacher's license, reasoning that the board "performed a traditional adjudicatory function of deciding facts . . ., applying law, and resolving the case . . . on the merits," as well as using a process that provided the aggrieved party with notice, an opportunity to be heard, and judicial review of the decision. *Creusere v. Weaver,* —— Fed.Appx. ——, ——, No. 07–5859, 2009 WL 170667, at *5 (6th Cir. Jan. 26, 2009) (unpublished). Applying the functional approach the Supreme Court articulated in *Cleavinger* and its progeny, the Court concludes the Commissioners are entitled to absolute, quasi-judicial immunity from Plaintiff's compensatory damages claims. The Commission is vested with the authority to regulate the sale of alcoholic beverages in the State of Michigan, which includes determining whether a particular beverage may be sold in Michigan. To effectively and impartially act in their regulatory role, Commissioners must be able to make decisions free of the constant threat of litigation against them in their individual capacities. Without absolute immunity, the Commission would constantly fear being subject to personal liability for what amounts to performing a judicial function—interpreting and applying liquor laws and regulations to the facts of a particular case.

Furthermore, the Commission's licensing authority is subject to a number of procedure safeguards that significantly reduce the need for private damages actions. After an applicant is notified of an adverse decision, the applicant may request the Commission to hold an appeal hearing and

reconsider their decision. Plaintiff took advantage of this procedural safeguard, requesting (and receiving) a hearing before a two-member majority of the Administrative Commissioners. At the hearing, both the applicant and an attorney representing the Commission's position are afforded the opportunity to present argument, after which an appellate decision is rendered. In this case, the decision against Plaintiff was affirmed. The applicant can then take their argument to the state court system, appealing the decision of the Commission to a state circuit court. Notably, absolute immunity does not prevent an applicant from bringing a constitutional challenge to the law itself or the application of the law to the applicant's particular situation. From there, a party may continue to appeal the decision through the state court system, up to and including the Supreme Court. These procedural safeguards, including the adversary nature of the proceedings and availability of the appellate process, ensure that the applicant has recourse to address what it perceives as unlawful Commission action.

The Commissioner's are serving a judicial function when serving on the Commission, interpreting Michigan law and regulations in the first instance in accordance with their statutory authority. Because they are serving a judicial function, they are entitled to absolute immunity from legal action challenging their decision in this case. Plaintiff was free to file suit against the Commission itself to challenge the Constitutionality of its ruling, but the claims for damages are barred by absolute immunity.

The decisions of other Court of Appeals on this issue further bolster the Court's conclusion. For example, when faced with a similar issue, the Seventh Circuit held that quasi-judicial immunity applied to shield liquor control commissioners from liability related to their licensing decisions. *Reed v. Village of Shorewood*, 704 F.2d 943, 952 (7th Cir.1983). The Court concluded absolute immunity was appropriate because the control commissioners were exercising their decision-making authority under Illinois law, and that their actions could be remedied through the state appellate process, making accountability through individual actions unnecessary. *Id.* at 952. The Third Circuit took a similar approach in *Keystone Redevelopment Partners, LLC v. Decker*, 631 F.3d 89 (3d Cir.2011), granting quasi-judicial immunity to former members of the Pennsylvania Gaming Control Board from suits arising out of the Board's gaming-license decisions. The role of the Administrative Commissioners in this case, as well as the appellate procedures in place to review the Administrative Commissioner's decisions, parallel the judicial functions of the individuals in *Watts, Reed,* and *Keystone Redevelopment Partners,* and the Court sees no persuasive reason to deviate from this approach in the present case. Accordingly, the Administrative Commissioners are entitled to quasi-judicial immunity from Plaintiff's damages claims in this case.[2]

## D. Qualified immunity also bars Plaintiff's claims against the Commissioners.

■■ Even if the Administrative Commissioners were not entitled to absolute immunity, they would be entitled to qualified immunity from Plaintiff's compensatory damages claims. "Qualified immunity shields an [official] from suit when she makes a decision that, even if constitutionally deficient, reasonably misapprehends

**2.** The Hearing Commissioners would be entitled to absolute immunity as well, to the extent they were involved in the denial of

Plaintiff's application in their capacity as Commissioners.

the law governing the circumstances she confronted." *Brosseau v. Haugen,* 543 U.S. 194, 198, 125 S.Ct. 596, 160 L.Ed.2d 583 (2004); *see also Cochran v. Gilliam,* 656 F.3d 300, 306 (6th Cir.2011) (citing *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982)). The Court uses a two-part inquiry when determining whether an official is entitled to qualified immunity, "asking ... whether, considering the allegations in a light most favorable to the [plaintiff], a constitutional right has been violated, and ... whether that right was clearly established." *Everson v. Leis,* 556 F.3d 484, 494 (6th Cir.2009) (quotations omitted). Plaintiff bears the burden of proving the Administrative Commissioners are not entitled to qualified immunity. *Ciminillo v. Streicher,* 434 F.3d 461, 466 (6th Cir.2006). Furthermore, the Court may decide which prong of the inquiry to consider first, enabling it to avoid deciding a constitutional issue—in this case, Plaintiff's First Amendment claim—when the case can be resolved on some other basis. *Pearson v. Callahan,* 555 U.S. 223, 232, 241, 129 S.Ct. 808, 172 L.Ed.2d 565 (2009) (recognizing the general rule against deciding constitutional issues when the case can be decided on an alternative basis).

Before reaching this constitutional issue the Court first considers whether Plaintiff's right was "clearly established." As the Court previously explained in *Timmon v. Wood,* 633 F.Supp.2d 453 (W.D.Mich. 2008),

> To determine whether a right was "clearly established," courts in the Sixth Circuit look first to the decisions of the Supreme Court, then to decisions of the Sixth Circuit, then to decisions of district courts within the Sixth Circuit, then to decisions of courts from other circuits. *Gardenhire v. Schubert,* 205 F.3d 303, 311 (6th Cir.2000). But a lack of caselaw squarely governing a given issue does not mean that a right is not

clearly established. *Lyons v. City of Xenia,* 417 F.3d 565, 579 (6th Cir.2005). The question in deciding whether a right was clearly established where there is no precedent on point is whether "defendants had 'fair warning' that their actions were unconstitutional." *Cummings v. City of Akron,* 418 F.3d 676, 687 (6th Cir.2005). Fair warning can be established when a violation is "sufficiently obvious under the general standards of constitutional care." *Lyons,* 417 F.3d at 579. Importantly, qualified immunity does not demand perfect understanding of the applicable laws. There is "ample room for mistaken judgments," and "all but the plainly incompetent or those who knowingly violate the law" will be held to enjoy qualified immunity. *Hunter v. Bryant,* 502 U.S. 224, 229, 112 S.Ct. 534, 116 L.Ed.2d 589 (1991).

After reviewing the relevant case law, the Court concludes that the First Amendment right Plaintiff's rely on as the basis for its compensatory damages claim was not clearly established when the Administrative Commissioners acted, and the Administrative Commissioners are entitled to qualified immunity as a result.

■■■ There is no dispute that the First Amendment applies to the "Raging Bitch" label Plaintiff used in marketing its beer, as "speech does not lose its First Amendment protection because money is spent to protect it, as in a paid advertisement of one form or another." *Va. Pharmacy Bd. v. Va. Citizens Consumer Council,* 425 U.S. 748, 761, 96 S.Ct. 1817, 48 L.Ed.2d 346 (1976). It is similarly well-established, however, that Government has the authority to regulate speech that is related to the sale, advertisement, and production of alcohol. *44 Liquormart, Inc. v. Rhode Island,* 517 U.S. 484, 499, 116 S.Ct. 1495, 134 L.Ed.2d 711 (1996); *Rubin v.*

*Coors Brewing Co.*, 514 U.S. 476, 115 S.Ct. 1585, 131 L.Ed.2d 532 (1995); *Hamilton's Bogarts v. State of Mich.*, 501 F.3d 644 (6th Cir.2007); *G & V Lounge, Inc. v. Mich. Liquor Control Comm'n*, 23 F.3d 1071 (6th Cir.1994). This case requires the Court to address the not-uncommon intersection of the First Amendment right of Plaintiff in its "Raging Bitch" beer label with the Commission's interest in promulgating and enforcing alcohol regulations.

Plaintiff relies on the "bedrock principle underlying the First Amendment ... that the government may not prohibit the expression of an idea simply because society finds the idea itself disagreeable" as the "clearly established law" that renders qualified immunity inapplicable to the Administrative Commissioners. (docket # 63, at 24 (quoting *Snyder v. Phelps*, —— U.S. ——, 131 S.Ct. 1207, 1219, 179 L.Ed.2d 172 (2011))). Plaintiff argues that "common sense should have sufficed to inform Defendants that they could not censor beer labels for being 'offensive,' in the same way that Defendants should have known that assault or burglary were illegal without consulting the Penal Code," and that Defendants are properly held personally liable for damages that resulted from their actions. (*Id.*) This argument is not enough, however. Plaintiff's general statement of First Amendment law, while correct, fails to state the issue at a level of specificity that allows for a meaningful analysis of whether the law at issue was clearly established, and whether the Commissioners had sufficient notice of the unconstitutional nature of their conduct to impose personal liability. *Cope v. Heltsley*, 128 F.3d 452, 459 (6th Cir.1997) (noting that for purposes of qualified immunity analysis, the issue must be stated "at a relatively high level of specificity" in light of the circumstances of the case). To properly address whether qualified immunity applies, the Court must determine what analytical framework properly applies to evaluate Defendants' conduct, and whether Defendants' regulation of the speech violated Plaintiff's clearly established constitutional rights. *See Bolger v. Youngs Drug Prods. Corp.*, 463 U.S. 60, 65, 103 S.Ct. 2875, 77 L.Ed.2d 469 (1983).

■■■■ After reviewing the record, the Court concludes that the "Raging Bitch" label constitutes commercial speech, and is therefore subject to the analytical framework the Supreme Court set forth in *Central Hudson Gas & Electric Corp. v. Public Service Commission of New York*, 447 U.S. 557, 562–65, 100 S.Ct. 2343, 65 L.Ed.2d 341 (1980). "The core definition of 'commercial speech' is that speech 'which does no more than propose a commercial transaction.'" *Semco v. Amcast, Inc.*, 52 F.3d 108, 112 (6th Cir.1995) (quoting *Va. Pharmacy Bd.*, 425 U.S. at 762, 96 S.Ct. 1817). When, as here, the speech constitutes more than merely proposing a commercial transaction, courts generally consider a variety of factors to determine whether the speech is primarily commercial, including whether the communication (1) is an advertisement, (2) refers to a specific product, and (3) whether the speaker has an economic motivation for the communication. *Bolger*, 463 U.S. at 66–67, 103 S.Ct. 2875. The presence of all three factors provide "strong support" for the conclusion that the speech is commercial, and therefore subject to *Central Hudson*. *Id.* In this case, the "Raging Bitch" name and label was indisputably used to advertise and refer to one of the beers Plaintiff produced. Additionally, as the record at the hearing before the Commission indicates, one of the primary motivations for the name and label was economic—to promote sales of the beer to the public through use of an *avant-garde*, artistic label that would resonate with the consumer. Accordingly, Plaintiff's label constitutes commercial speech.

*Central Hudson* provides a four-part test "that subjects restrictions on commercial speech to a form of intermediate scrutiny.... Under the first prong ... the commercial speech at issue must concern lawful activities and not be misleading, thus entitling it to First Amendment protection." *Pagan v. Fruchey*, 492 F.3d 766, 770 (2007) (citing *Central Hudson*, 447 U.S. 557, 100 S.Ct. 2343). If the first prong is satisfied, a restriction will be upheld if the government "assert[s] a substantial interest in support of its regulation," "demonstrate[s] that the restriction on commercial speech directly and materially advances that interest[,]" and narrowly tailors the regulation to achieve its purpose. *Id.* (quoting *Fla. Bar v. Went For It, Inc.*, 515 U.S. 618, 624, 115 S.Ct. 2371, 132 L.Ed.2d 541 (1995) (citing *Central Hudson*, 447 U.S. 557, 100 S.Ct. 2343)). While the elements of the four-part test are well-established, however, their application to particular types of commercial speech are not. *See, e.g., Lorillard Tobacco Co. v. Reilly*, 533 U.S. 525, 574, 121 S.Ct. 2404, 150 L.Ed.2d 532 (2001) (Thomas, J., concurring-in-part and concurring in the judgment) (noting the Supreme Court had followed "an uncertain course" in its First Amendment jurisprudence since *Virginia Board of Pharmacy* in 1976, with "much of the uncertainty being generated by the malleability of the four-part balancing test of *Central Hudson*").

Plaintiff's argument that the prior restraint doctrine applies to the Administrative Commissioners' actions in this case is unpersuasive, as it attempts to advance the doctrine's application beyond certain instances of non-commercial speech and into the realm of commercial speech. Contrary to Plaintiff' position, "the Supreme Court has, on several occasions 'observed that commercial speech is such a sturdy brand of expression that traditional prior restraint doctrine may not apply to it,'" and the Court is unaware of any case in this

Circuit that has extended this doctrine to the commercial speech context. *See Discount Tobacco City & Lottery, Inc. v. United States*, 674 F.3d 509, 532–33 (6th Cir.2012); *accord Wilson v. Lexington–Fayette Urban County*, 201 Fed.Appx. 317, 322–23 (6th Cir.2006) (questioning whether the prior restraint doctrine applies to commercial speech); *Hunt v. City of Los Angeles*, 638 F.3d 703, 718 n. 7 (9th Cir.2011) ("It is an open question whether the prior restraint doctrine even applies to commercial speech."). To the contrary, when the Supreme Court and Sixth Circuit have addressed this issue, they have refused to extend the prior restraint doctrine to commercial speech, instead using the *Central Hudson* test that the Court applies below. *Id.* (citing *Central Hudson*, 447 U.S. at 571 n. 13, 100 S.Ct. 2343; *Zauderer v. Office of Disciplinary Counsel of Sup. Ct. of Ohio*, 471 U.S. 626, 668 n. 13, 105 S.Ct. 2265, 85 L.Ed.2d 652 (1985); *Va. Pharm. Bd. v. Va. Citizens Consumer Council*, at 761, 96 S.Ct. 1817); *see also Lorillard Tobacco Co. v. Reilly*, 533 U.S. 525, 554, 121 S.Ct. 2404, 150 L.Ed.2d 532 (2001).

The Court is unaware of any Supreme Court or Sixth Circuit precedent addressing the issue of whether state officials violate an individual's clearly established right when they deny a license to sell alcohol based on the potential adverse effects on the "health, safety, or welfare of the general public" stemming from the name and label of the beverage—in this case, "Raging Bitch" beer. To find precedent sufficiently analogous to even arguably serve as the basis of a clearly established right, Plaintiff was forced to rely on the Second Circuit's decision in *Bad Frog Brewery, Inc. v. New York State Liquor Authority*, 134 F.3d 87 (2d Cir.1998), which arose from the defendant, New York Liquor Authority ("Liquor Authority"), disapproving beer labels depicting "a frog with the second of its four unwebbed 'fin-

gers' extended in a manner evocative of a well known human gesture of insult." *Id.* at 90. The Second Circuit concluded that the image of the frog was commercial speech, and the First Amendment *Central Hudson* framework applied. *Id.* Applying *Central Hudson,* the Second Circuit determined that the State had substantial interest in regulating the speech, but that the defendant did not show "that its denial of Bad Frog's application directly and materially advance[d] . . . its state interests" and that the prohibition was more extensive than necessary to advance the State's interests. *Id.* at 100–01. However, the Court concluded that qualified immunity barred Bad Frog's damages claims against the Authority's members in their individual capacity. *Id.* at 101.

Reliance on *Bad Frog Brewery* as clearly establish law prohibiting the Administrative Commissioner's decision in this case is unavailing. First, *Bad Frog* involved a constitutional challenge to the statute on its face. In this case, Plaintiff has abandoned its damages claim against the Commissioners based on this legal theory because the Rule at issue was repealed, and the Commissioners did not pass the Rule in the first instance. Consequently, the Court declines to base personal liability on a Rule that is no longer in effect and which Commissioners had no say in its passage. Second, as noted above, the *Central Hudson* framework is an inherently complex, factually dependent inquiry. *Bad Frog* involves a different statute, different facts, and a different procedural posture. The Liquor Authority provided different reasons for their denial of Bad Frog's license than the Commissioners in this case. There are simply too many distinctions between *Bad Frog* and this case to hold the Commissioners personally liable based on their failure to follow *Bad Frog* in their own decision-making process, particularly given that *Bad Frog* is non-binding Second Circuit precedent.

Plaintiff has failed to demonstrate the Commissioners violated any "clearly established law," and qualified immunity therefore applies.

Because the Court concludes that the Administrative Commissioners did not act in violation of any clearly established law, the Court declines to reach the issue of whether the Commissioner's actions violated Plaintiff's First Amendment right in this case. That would amount to an advisory opinion in an area of law that continues to evolve, as evidenced by not only *Bad Frog* and the present case, but most recently by Founder's Brewing Company's challenge to Alabama's decision to ban the sale of its "Dirty Bastard" beer within the state. *See* Jay Reeves, *Dirty Bastard Beer Ban: Alabama Bans Brew over Profanity on Label,* HUFFINGTON POST, Apr. 19, 2012, http://www.huffingtonpost.com/2012/04/19/dirty-bastard-beer-ban—n—1438734.html. Moreover, the Supreme Court's recent decisions in *Citizens United v. Federal Election Commission,* 558 U.S. 310, 130 S.Ct. 876, 175 L.Ed.2d 753 (2010), *Sorrell v. IMS,* —— U.S. ——, 131 S.Ct. 2653, 180 L.Ed.2d 544 (2011), and other First Amendment cases more broadly highlights the evolving nature of First Amendment jurisprudence. This reinforces the need for caution when determining what is "clearly established" for purposes of qualified immunity and thereby subjecting government officials to personal liability for their decisions. Indeed, in this case the Commissioners themselves re-assessed their original position in light of emerging First Amendment jurisprudence, and decided to grant Plaintiff a license. The law is best served by giving these decisionmakers the appropriate latitude to make responsible judgments in light of developing law and to leave for the Courts only those constitutional questions that must necessarily be decided to dispose of a particular case. Because this case does not

require the Court to resolve the constitutional question, the Court declines to reach it.

## CONCLUSION

For the reasons set forth above, Defendants' Motion (docket # 53) is **GRANTED**, and Plaintiff's Motion is **DENIED**. The Hearing Commissioners cannot be held liable for any claim arising out of the denial of Plaintiff's application because they quite simply were in no way involved in the licensing decision. Moreover, because the Commissioners were serving a judicial function when they considered Plaintiff's application, absolute immunity bars damages claims against them in their individual capacities. Even if judicial immunity did not apply, qualified immunity would shield the Commissioners from liability for money damages, because the applicable First Amendment law was not "clearly established" so as to subject the Commissioners to personal liability for the particular way they balanced and applied the *Central Hudson* factors in this case.

**IT IS SO ORDERED.**

## *JUDGMENT*

In accordance with the Opinion and Order entered this day, Judgment is entered in favor of Defendants and against Plaintiff on Plaintiff's remaining compensatory damages claims. This matter is now closed.

**IT IS SO ORDERED.**